# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| Jerry Lee Hairston,<br>    Plaintiff, | )<br>)<br>) |
| v. | )     1:19cv862 (AJT/MSN) |
| | ) |
| Jason Wilson, et al.,<br>    Defendants. | )<br>) |

## MEMORANDUM OPINION

Jerry Lee Hairston, a Virginia inmate proceeding pro se, has filed a civil-rights action under 42 U.S.C. § 1983, claiming that his due process rights were violated while he was detained at the Virginia Center for Behavioral Rehabilitation (VCBR) under a civil committed order. He seeks compensatory and punitive damages, as well as preliminary and permanent injunctive relief that would modify policies at VCBR. In two motions, defendants Jason Wilson, Anita Schlank, Royace Baugh, Sarah Webster, Omar Higgins, and Brittany Pride move to dismiss the claims against them for lack of jurisdiction, see Fed. R. Civ. P. 12(b)(1), and failure to state a claim for relief, see id. 12(b)(6). [Dkt. Nos. 29, 42]. Hairston has received the notice required by Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), [Dkt. No. 29], and opposes defendants' motions, [Dkt. No. 33]. Because the claims for injunctive relief are moot and the complaint does not plausibly allege that Hairston was denied a liberty interest without due process, the motions to dismiss will be granted.

### I. The Complaint

When Hairston filed the complaint, he was civilly detained at VCBR after a state court found that he was a sexually violent predator under the Civil Commitment of Sexually Violent Predators Act (SVPA). See Va. Code § 37.2-900 to 37.2-921; [Def. Mot. to Dismiss, Ex. 1 & 2].

The events underlying the complaint took place there. Below, the Court recounts the complaint's factual allegations, which the Court accepts as true for the purpose of ruling on the motion to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). The Court also may consider the attachments to the complaint and public records without having to convert the motion to dismiss into a motion for summary judgment. See Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009).

In this lawsuit Hairston principally takes issue with a report—specifically, an observation note written on October 11, 2018—that caused a setback to his treatment progression at VCBR. An observation note is part of a detainee's treatment record and documents behavior, including behavior related to phase goals, behavior related to violations of rules and privileges, and refusals of medical appointments, medication, and meals. [Dkt. No. 1, Compl. Ex. 1].

VCBR has a three-phase treatment program. [Id.]. On September 25, 2018—weeks before the observation note was written—Hairston was placed on Phase II probation. [Dkt. No. 12, Amended Compl. Ex. 13]. Then, on October 19, Hairston was demoted from Phase II to Phase I "due to engaging in a sexual acting out behavior" and for withdrawing his consent for treatment. [Id. Ex. 14]. That same day, Hairston's therapist, Higgins, discussed the observation note that had been written by Pride a few days earlier. [Id. ¶¶ 6–7]. In the observation note, Pride reported that during the evening of October 11, when "I checked room 14 I seen [sic] resident Hairston beating his penis." [Id. Ex. 3]. The note was classified as "other sexual behavior." [Id.]. Hairston asserts that "[t]his was a major infraction that required me to be placed on the Behavioral Unit, and be placed on Privilege Level D, Red Card." [Id. ¶ 7]. Hairston denied that he engaged in the behavior reported in the observation note. [Id. ¶ 8]. Higgins informed Hairston that he would have to seek an amendment to challenge the note's content. [Id. ¶ 9].

2

Hairston submitted to Baugh, the director of Residential Services, an amendment requesting that the observation note be removed from his record because he did not engage in the reported behavior. [Id.]. Baugh did not remove the note; instead, he recategorized it from "other sexual behavior" to "other" because "[u]pon review of the activities that lead to this documentation it has been determined that there are discrepancies which were not accurately documented." [Dkt. No. 1, Compl. Ex. 3].

After the note was recategorized, Higgins told Pride to rewrite the observation note to reflect that "Mr. Hairston was observed with his hands in his pants and movement in his groin area." [Dkt. No. 12, Amended Compl. ¶ 10; Dkt. No. 1, Compl. Ex. 6, at p. 4]. When confronted with the rewritten observation note, Hairston "consistently noted that he was not masturbating or exhibiting any other sexual act" and asserted, instead, "that there was a possibility while resting in bed . . . he could have been scratching his leg because of his eczema." [Dkt. No. 1, Compl. Ex. 6, at p. 5]. Higgins's treatment team ultimately "concluded that the narrative of the observation note depicts inappropriate sexual behavior, which is a violation of Phase I goals." [Id.].

The complaint does not clearly state what claims Hairston seeks to bring based on these allegations. Liberally construing the complaint, see Erickson, 551 U.S. at 94, the Court gleans that Hairston seeks to bring the following three due process claims based on his phase demotion and the role that the observation note played in it: (1) A phase demotion amounts to punishment in contravention of his substantive due process rights; (2) he has liberty interest in advancing through VCBR's treatment for civilly committed sexual violent predators and the phase demotion, which was based on an observation note and imposed without a hearing, interfered with that interest; and (3) there was insufficient evidence to support the phase demotion.

3

## II. Standard of Review

Defendants move to dismiss the complaint under Rules 12(b)(1) and 12(b)(6). "A 12(b)(1) motion addresses whether [plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of his claim, and a 12(b)(6) motion addresses whether [plaintiff] has stated a cognizable claim, a challenge to the sufficiency of the complaint." Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 452 (4th Cir. 2012).

## III. Analysis

### A) Rule 12(b)(1)

In a supplemental motion to dismiss, defendants argue that Hairston's claims for declaratory and injunctive relief are moot because he has been released from VCBR, and, thus, he is no longer subject to the observation note policies he seeks to change through this lawsuit.

Defendants are correct. A detainee's transfer to a "location where he is no longer subject to the challenged policy, practice, or condition moots his claims for injunctive and declaratory relief, even if a claim for money damages survives." Incumaa v. Ozmint, 507 F.3d 281, 286–87 (4th Cir. 2007). Because Hairston is no longer confined at VCBR, his claims seeking declaratory and injunctive relief related to the observation note policies are now moot and must be dismissed for lack of subject matter jurisdiction.

**B) Rule 12(b)(6)**

**i. Constitutional Claims[1]**

Defendants argue that Hairston has failed to state a claim for relief under the due process clause of the Fourteenth Amendment based on his demotion from Phase II to Phase I at VCBR. To state a claim for relief under the Fourteenth Amendment, a civilly committed detainee must plausibly allege that he was unconstitutionally punished or that he was denied a liberty interest without due process. See Williamson v. Stirling, 912 F.3d 154, 173 (4th Cir. 2018) (analyzing Fourteenth Amendment due process claim brought by pretrial detainee); see also Matherly v. Andrews, 859 F.3d 264, 274–75 (4th Cir. 2017) (declaring, "we think it natural to borrow from the pretrial-detainee context the standard for constitutionally impermissible 'punishment' and apply it here" to claims brought by civilly committed federal detainee).

Hairston has not satisfied this standard. First, Hairston has not alleged that any condition at VCBR amounts to punishment within the meaning of the Fourteenth Amendment. A detainee may bring a substantive due process claim challenging "the general conditions of confinement or the treatment of all detainees in a specific facility." Williamson, 912 F.3d at 174 (4th Cir. 2019). Because Hairston is challenging an individually imposed restriction, his claims sound in procedural due process. See id.

But Hairston also fails to state a procedural due process claim based how the observation-note policy was applied to him. Detainees have a liberty interest "in remaining free from punishment," so disciplinary measures stemming from misconduct "trigger procedural protections." See id. at 181. But Hairston has not plausibly alleged that he was punished.

---

[1] The complaint does not state in what capacity Hairston is suing the defendants. To the extent he is suing them in their official capacities and seeks monetary relief, those claims are not cognizable under § 1983 and must be dismissed. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

5

Hairston baldly declares that the behavior reported in the observation note requires a decrease in privileges and that the phase demotion amounts punishment. That is insufficient. "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Hairston has not alleged that he actually received fewer privileges because of the observation note, nor has he provided a factual basis to support his contention that he was punished. Moreover, "[a]bsent a showing of an expressed intent to punish on the part of detention facility officials, if a particular condition or restriction is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Bell v. Wolfish, 441 U.S. 520, 538–39, (1979). Using the information obtained in the observation note to support his demotion was reasonably related to VCBR's legitimate interest in Hairston's recovery. Indeed, "[s]ex offenders are a serious threat in this Nation," and "[t]herapists and correctional officers widely agree that rehabilitative programs can enable sex offenders to manage their impulses and in this way reduce recidivism" McKune v. Lile, 536 U.S. 24, 32–33 (2002).

Hairston further urges that he has a liberty interest "to move forward in my treatment," and so, he argues, he cannot be demoted from Phase II to Phase I without due process. [Dkt. No. 12, Amended Compl. ¶ 33]. The Court disagrees. A liberty interest may spring from the Constitution itself, through "guarantees implicit in the word 'liberty,'" or from state law or policy. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Because the Constitution affords detention centers "wide latitude to set the conditions of treatment for civil detainees," see Matherly, 859 F.3d at 264 (citing Youngberg v. Romeo, 457 U.S. 307, 321 (1982)), persons civilly committed as sexual violent predators have no federal liberty interest in obtaining

particular treatment, see Cooke v. Johns, No. 5:11-CT-3260_FL, 2012 WL 4500668, at *3 (E.D.N.C. Aug. 21, 2013) (citing McKune, 536 U.S. at 39–40); cf. Moody v. Daggert, 429 U.S. 78, 88 n.9 (1976) (concluding that convicted prisoners have no liberty interest in eligibility for rehabilitative programming). And because Virginia's SVPA is designed for "treatment and management decisions regarding committed respondents" to be made "without obtaining prior approval of or review by the committing court," See Va. Code § 37.2-909(A), the Court likewise cannot conclude that the SVPA creates a liberty interest in individual detainees' treatment decisions that would invite this Court's involvement in those decisions.

Finally, Hairston's claim challenging the sufficiency of the evidence used to support the phase demotion also fails. When a detainee's liberty interest in at stake, a decision that affects that interest must be supported by some evidence. See Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985). Because the Court has already concluded that the demotion did not impact any liberty interest, it need not inquire into the sufficiency of the evidence used to support the demotion.

### ii. State Law Claims

Defendants ask the Court to decline to exercise supplemental jurisdiction over Hairston's state law claims. "Once a district court has dismissed the federal claims in an action," as the Court has done here, "it maintains 'wide discretion' to dismiss the supplemental state law claims over which it properly has supplemental jurisdiction." Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 553 n.4 (4th Cir. 2006) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 353–54 (1988)). The Court shall exercise its discretion to dismiss the supplemental state law claims.

## IV. Conclusion

For the reasons outlined above, and through an Order that will issue alongside this Memorandum Opinion, the defendants' motions to dismiss [Dkt. Nos. 29, 42] will be granted and plaintiff's motion to dismiss defendants' motion to dismiss [Dkt. No. 33] will be denied.

The Clerk is directed to send a copy of this Order to plaintiff and to counsel of record for defendants.

Entered this 24th day of June 2021.

Alexandria, Virginia

Anthony J. Trenga
United States District Judge